So, I'm sure you've done that with the clerk, but if you would remind us as well as you begin your argument, that would be helpful. And with that, you may call the first case. 13-1701, ABC Corporation v. United States of America, oral argument not to exceed 15 minutes. I'm sorry. Good morning. May it please the court, I would like to reserve three minutes for rebuttal. That is fine. A lot has happened in the past 65 years since this court decided Cleveland Allerton, an issue that this court described back in 1948 as one of first impression for which there is no precedent. But regardless of whether that decision was correct when it was issued, a lot has happened. The Supreme Court has issued a number of pronouncements, beginning probably in 1970. And Congress has passed some special tax rules that we think mandate not following Cleveland Allerton in the circumstances today. Now, this court took a bifurcated approach back in 1948, and it split a purchase into a capital element and a non-capital element. That, we submit, is no longer permitted, either by the Internal Revenue Code or Supreme Court pronouncements. In 1954, when the Internal Revenue Code was vastly overhauled, Congress passed some priority ordering rules. These are sections 161 and 261. And they were described in Idaho Power, one of the Supreme Court cases we rely on, again, as priority ordering rules. And they indicate that the same exact expenditure, which can be deductible in certain circumstances, if it's associated with a capital transaction, has to be capitalized. That, we submit, is exactly what happened here. We do not dispute that if a lessee has a lease and pays the lessor to get out of the lease and walks away... What if he stays? What if he stays and buys the property two days later? You're a lessee, don't you? I mean, you know this. The government would probably say these were the same argument. Three days? A week? Well, it really depends on how that works. I mean, this particular lease did not have that option. Some leases have the option you can buy it out. The lease in the ship case, Union Carbide, had a provision for buying out the lease. As a matter of fact, interestingly enough, the price of purchasing the ship was 20% less than buying out the lease. So that's why the taxpayer in that ship case, Union Carbide, bought out the ship. Idaho Power presents a situation that you would like us to believe is so directly analogous to Cleveland Allerton as to speak to whether it's been abrogated or not. But Idaho Power does not, in fact, involve the precise issue in Cleveland Allerton or the precise issue before us today, does it? No, no, it doesn't. It doesn't. What those Supreme Court cases indicate is these are now the rules for capitalization. The only cases that present almost this exact issue are Cleveland Allerton, Millinery Center, and Union Carbide really does. The tax court case in Union Carbide is almost on all fours. None of the Supreme Court cases deal with a lessee buying out. Of course, and what we're – there's a big overarching issue here about whether or not the principles you are arguing are not at too high a level of abstraction and too far removed from the precise issue before us and involved in Cleveland Allerton to speak to whether or not – directly to whether or not Cleveland Allerton has been abrogated. Is that not correct? Well, the point I'd like to make is that in 1948 – than the precise issue in this case, right? No, we haven't come before the Court of Appeals since – No, that's not what I ask you. I mean, you have to concede if none of the cases is exactly on point, you are talking about more abstract principles than the precise issue, don't you? Well, these we submit are overarching principles that – Right. And they're at a greater level of abstraction. And so the question for us is whether they speak sufficiently to our situation to indicate abrogationism. That's precisely – that's exactly why we're here. Because we think that's exactly what we do. So it shouldn't be too much of a problem for you to concede that they're at a higher level of abstraction. Well, because, yes, this – the interesting part about this case is this brings all of those concepts to a head. And it shows what has happened in the past 65 years and why today's tax concepts mandate a different conclusion than what this court held back in 1948. How about the Milnery case? That's 56. Is that a long time ago? We can disregard that? Well, you know, it was interesting because there was a series of cases between 48 and 55, including a district court case in this circuit called Trock, in which these issues came up, deduction versus capitalization. And then once the Second Circuit disagreed with this court, the Supreme Court immediately took it. And then, unfortunately for us – And then they discovered they didn't. And the fact that they decided they didn't have a conflict and they would wait for another day, that's pretty close to what Justice Frankfurter said. Doesn't that imply that there is still an issue left for separation? Well – It seems to me that case argues against what you're saying it stands for. Well, the Supreme Court – I mean, we acknowledge the Supreme Court ducked the actual issue. They decided that they agreed to take it on the conflict. But they did indicate in several places in the opinion that the purchase price, what you purchase, determines is this a capital transaction or not. And the Supreme Court pointed out that when the Milnery Center made the purchase, they also got out of the lease. So they accomplished two things by the purchase price. They now own the building and the land and they no longer have to pay rent. And there's a sentence following where the Supreme Court ducks the issue where they say this is essentially a capital type transaction. That is exactly what we think is going on here. You can't separate what they did. They spent $11 million. What did they do? They bought the land and the buildings. That is a quintessential capital transaction. And it doesn't matter what the motive was. The Supreme Court pointed out that motive is irrelevant. The primary purpose for an expenditure, that came up to the Supreme Court in several instances. In the landmark case in law books, Corn Products and Arkansas Best pointed out that motive for making an expenditure does not determine the tax treatment. But, you know, why can't you separate these expenses or these costs? I mean, these three Supreme Court cases that you argue have abrogated Cleveland Allerton deal with arguably ancillary expenses, litigation expenses, professional expenses that do contribute to sort of the capital nature of the property. Whereas here you have a property that's being purchased for, everybody agrees, worth $2.75 million. And the other $6.25 million is really just to buy out this onerous lease. I mean, why can't you separate that? Okay, the reason you can't separate is that... It seems to me that Cleveland Allerton can be read in harmony with these three Supreme Court cases. It's not a situation of sort of ancillary expenses. It's a clear division of expenses. One is capital and one is business expense. I'm just for purposes of argument. For purposes of argument, well, if you think that, then I lose. The way I win is to point out what they bought, the $2.75 million, was not a purchase contract for $2.75 million. This was just an expert's valuation. Value does not equal price. It's uncontroverted. It's uncontroverted, but the $2.75 million is the price of property when you don't consider the list. Shouldn't they structure the transaction incorrectly? If they'd structured it differently, would your argument be taken away? Well, according to the lease, they did not have an option to buy out the lease. The answer is Judge Norris. I think we would still come out the same place. The price of property, when you buy property that's subject to a lease. What if they'd stated in the agreement how the purchase price was arrived at? If they had stated it, it still wouldn't matter. It still wouldn't matter. There's no way. Even after the reservation in the 56 case, where the Supreme Court said, we may need to review it when you have this onerous situation. Facts are clear, uncontroverted, but we're going to stick him anyway with this. It just doesn't make any sense. As you say, if he walked away from it, but then we're backing up. If they bought it out a month before, and then they bought it. You're going to stick with this forever. It doesn't make any sense. Well, if you want to visualize, I use some of my red times. If you want to visualize two commercial structures, both of them completely finished, but one is fully rented, the other one is not. The one that's fully rented is going to sell for a much higher price. That doesn't mean the person who buys that can separate that into the building price and the lease price. Everything is folded into the building price. That is this case. And that's what we're saying. That's this case because anybody that would buy this property, an outsider or an insider. Would a third party have paid that price for this? A third party would have had to pay $11 million. And wouldn't have died. I mean, that's just, people act rationally. They'd have paid $2.75, wouldn't they? No, Judge Norris, they wouldn't because the building was subject to this lease. It paid a lot of rent per year. So someone would have bought it and said, oh, I'm going to buy this building because I got a nice income stream. So, yes, except for the fact that the person on site might actually pay more because they wouldn't have to move and take their equipment out. The price of the building for an outsider and insider is $11 million. That shouldn't be capitalized. That couldn't be right, could it? Because, I mean, why would the outsider want to pay the full value of the lease? I mean, why wouldn't the outsider be willing to pay something for it? But, you know, the outsider is taking some risk involving whether the lessee defaults on the lease. I mean, there's some other factors that would go into play. So saying they're in analogous situations is not, strictly speaking, correct, is it? Well, that would be the case for any purchase of a commercial building subject to a lease. You have to take the risk that they may walk away, they may go bankrupt. Wouldn't that be a factor to consider in considering what price you wanted to pay if you were the outside purchaser? Sure, but that's also the price for the inside purchaser. I mean, they could purchase it and then say, okay, I'm going to go bankrupt or, you know, whatever. So I think what I'm emphasizing is tax parity. That's also announced in the Supreme Court cases. The Supreme Court says we want the same rule to apply to an insider purchase and an outsider purchase. Okay, well, thank you, Counselor. Your initial time has expired. You'll have some rebuttal time. Good morning, if it pleases the Court. The fundamental problem with the argument that the government makes when they say that everything that was paid has to be grouped under a capital transaction is that there was not just a capital transaction. There was, as a matter of law, two elements to this transaction, one being capital of the purchase and one being the lease termination, which even the IRS and the government has repeatedly acknowledged is always a deductible expense. Because when this transaction occurs, all the tenant has at the end, no longer being a tenant, is in one hand the property, which only has the value of $2.75 million, and in the other hand, a pure expense. There's no way that that can be characterized, that $6.25 million, as giving them a future benefit as that term is understood in the law of capitalization and ordinary deductions. You can't sell the $6.25 million. It can't produce revenue like the building can over here. It is a pure expense. So how do we look at the phrase subject to a lease? I'm assuming in your argument that the property can be purchased subject to a lease and the lease continues. And in that case, maybe it's a capital expense. Or you can have a purchase of property that had a lease, but the lease is terminated by reason of some sort of a buyout, which is essentially what happened here. Those two types of transactions should be viewed differently for tax purposes. Very differently. Very differently. Here's the reason. The parity example that the government provides is a bad analysis. It's not the proper parity analysis. Idaho Power is the proper parity analysis. In Idaho Power, you had investment by someone who owned the equipment and built their building. That's added into the capital transaction of the building because it's no different than a different party who had to pay somebody for the equipment to build the building. In both those instances, the investment is the same. So they both should be capitalized. In our circumstance, a third party that comes in and buys the property subject to the lease, such that the lease, whatever value there is in the lease, and those lease payments will be there, that third party now has an asset that has both pieces. It has the value of the property on the one hand, and it has a valuable commodity over here,  There is a collection issue, so it's not necessarily the exact amount is what, in this case, the tenant would have to pay to buy out the lease, but there is a valuable asset that will be supported by those lease payments. That's an asset that provides future revenue. That's an asset that should be capitalized. Together, that payment. When the tenant buys the property, two things occur. The tenant has the property, and by the doctrine of the merger of title, the lease has expired simultaneously. Not sequentially, simultaneously. That taxpayer does not have a future benefit, the $6.25 billion that was paid to buy out the lease, under the simple arithmetic that Cleveland Allerton allowed for. That does not provide any future benefit, that $6.25 billion. It does not produce income. It cannot be sold. It is a pure expense, and it's fundamentally unfair, but also just not proper tax law to deny that taxpayer that expense, simply because that taxpayer ended up with the property. That's what Cleveland Allerton recognized. That taxpayer, just in Cleveland Allerton, they had a hotel on it. They had to buy the property to terminate the lease. Here, under the contract, the taxpayer, ABC, had to buy under the lease. The taxpayer couldn't simply buy out the lease. Had to buy out the property. So they're left with this property, $2.75 million, but their lease termination still remains as a pure expense and should be deductible. Tell me how would you define the clause, property is acquired subject to a lease. Under any common usage, that describes the situation in which a third party buys the property and the lease exists and those lease payments continue to come in. It's common law conveyancing, isn't it? It's just... I built property 101. Right. I mean, you kind of said that in your brief. But anybody... Maybe I should ask your opposing counsel if he owns real estate. He's certainly got a title policy. But I think... He's got stuff that he's subject to. And the example, I think, that makes it so obvious to everyone who's ever read a legal book or been in law school... That's all right. ...is to add the easement language or add the deed restriction. It doesn't make any sense to say property acquired subject to a deed restriction and then think of it as somebody who's bought out a deed restriction. I also think it's curious, on page 48 of the government's brief, when they're discussing Cleveland Allerton and they're discussing the example of the third party situation coming in and buying the property where the lease exists, they describe it the same way. On page 48, you can quote the brief. They say, acquiring property subject to the lease. Even they use it the way it's supposed to be used. They only switch that argument when they get to the 167 portion of their argument. So I just don't think you can read it any other way. And I thought that the lower court had an excellent explanation and analysis in its opinion on this order where it described the fact that it's not a sequential... The merger of title documents is not sequential. You don't have an acquisition and then the lease goes away. It happens simultaneously. So there's never a situation where it's acquired subject to the lease because the very acquisition, when it occurs, there is no lease. These Supreme Court precedents, clearly there is a higher level of abstraction. I think, though, what's also very important is that they support what this court did back all those years ago. What this court did those years ago, when you read those precedents, shows that this court was actually ahead of its time. Not behind the time, ahead of its time. What those cases talk about, and I think it's also worth noting, the government has come in and claimed that there is a bright line standard now that can be divined like a constellation in the stars that they've found, that all these Supreme Court cases can be linked together to say whatever certain amount is paid in connection with, in the neighborhood of a capital transaction, must all be capitalized. Well, if that was true, this case has been around for a long time. I tried this case. They had never raised this argument. If they did, they raised it in just a whisper in the lower court, in the summary judgment proceedings. The Union Carbide case, which the tax court analyzed a similar situation, that argument isn't there. INDAPCO isn't cited in that case. There's a private letter ruling that the National Office of the IRS issued right after this tax year, 1998, and then a field service advice in 1999. They both applied Cleveland-Aylerton. That's after all three of the Supreme Court cases, they say, created this rule. Those Supreme Court cases were never mentioned in that national office's private letter ruling. That's not in the record, is it? It is in the record. It is in the record. It's cited in the brief. Point being, though, it's not as precedential value, but if there were such an obvious rule, you would have thought they would have figured it out before the time of this appeal. There is no such bright-line rule. In the cases, in fact, it's read, and also the progeny of those cases, for instance, the Staley case in the Seventh Circuit, and the Wells Fargo case in the Eighth Circuit, support Cleveland-Aylerton. Those cases, the thrust of those cases supports it. I would say before getting to that, I would just note that those cases, one of the reasons why they're not, I don't believe, mentioned in the private letter ruling, and they don't come up in Union Carbide, is the Cleveland-Aylerton situation is this distinct situation in which two things are going on. It's very simple mathematically to show the amount of the deduction versus the capital acquisition. There's a simple mathematical formula that Cleveland-Aylerton applied that gives the roadmap for this case to do it here, too. The allocation is simple. Those cases, those Supreme Court cases and their progeny that the government relies upon, deal with situations really where you've got ancillary expenses. There have been cases like this going way back where, for instance, attorney fees and that sort of thing that are incurred in connection with a corporate reorganization or something like that, a capital transaction. Clearly, there's a capital transaction, and then there's whether the attorney fees incurred in connection with that should be grouped into the capital transaction. Those cases have existed for a long time, and these Supreme Court cases are similar type cases where there is a capital transaction, and the issue is whether an ancillary expense should be grouped with it. The reason why they're grouped is because it's part of the investment. It facilitates the transaction. That law has been in existence for a long time. That's a very different situation than Cleveland-Aylerton where you've got two separate things going on, not just a capital transaction. But again, what's the thrust of those cases? First of all, contrary to what the government says, it's not that this court should rely upon labels and formalism and an inflexible approach. It's the opposite. It's exactly what Cleveland-Aylerton said. I've gone back and read that Cleveland-Aylerton case more times than I can count, and it's amazing to me that it answers every single issue, and it answers it similar to how the cases are dealing with it today and how the Supreme Court's dealing with it today. In Cleveland-Aylerton, what did the court said? We're not going to rely upon legalistic formalism. We're going to do a realistic, pragmatic approach, a realistic approach. That's what each and every one of those cases cited by the government says. In DOPCO in particular, it urges an individualized, pragmatic, realistic approach dependent on the special facts of the case, not a bright line inflexible rule. So again, Cleveland-Aylerton was really ahead of its time. The other central thrust of those cases is that to the extent you are going to group some other expense into a capital acquisition or a capital transaction, it has to provide a future benefit. That's not necessarily enough, but it has to have some element of the future benefit because otherwise it makes no sense for it to be capital.  You're not going to depreciate to match those future expenses against the future revenue that it's going to provide. Because if it's just an expense, if it has no future benefit, then it should be matched to current revenue, which is what the government has always agreed is the case with a lease termination. That's in the way of damages. It relates to a bad contract. It looks backwards. It's not a future benefit. In other words, it's not prepaid rent. It doesn't give the taxpayer a right to future tenancy. They have the fee simple, and fair market value rent is subsumed within the fee simple, $2.75 million, because that's the way you come in part to that appraisal. The portion paid above the $2.75 million is purely an expense. It's the premium part of the contract. The onerous part of the contract. The bad part. The part that should be matched to future income. In all of those cases, Idaho Power, INDOPCO, Woodward, and the progeny, Staley & Wells Fargo, what they talk about is there a future benefit that that expense is providing. INDOPCO really called that out. And that is completely consistent with Cleveland Allerton, such that if I were arguing this case here today and Judge Maloney had ruled in our favor in the absence of Cleveland Allerton, we should be successful even in the absence of Cleveland Allerton. But, like I said, this circuit has already decided a case that in a way was prescient and anticipated where the law would go in terms of looking at these capital versus ordinary situations in a pragmatic way and looking for a future benefit. Which allows the court, by the way, contrary to their central argument, allows the court in a situation such as this to allocate. Because that's what's going on in those cases. In the Seventh Circuit Staley case, they remanded it back to the court for the very purpose of allocating what's ordinary, what's capital. It's not the rule that everything in the neighborhood or in the context of the capital transaction is capital. Courts can allocate. That's the same thing that IRS said back in 1998 in their private letter ruling. The court can allocate. The taxpayer can allocate. And so the rule here is not what the government says. The government wants the law to be that. It is not the law, nor should it be. Cleveland Allerton was ahead of its time. It was the proper ruling then. It's the proper ruling now. And we ask that this court affirm the district court's order. Thank you. Okay. Thank you, counsel. Mr. DeWard, I don't recall how much time you have left in rebuttal, but about two minutes. Would that be acceptable? I just want to cover a few points. Mr. Rothenberg, I apologize for referring you. I'm sorry. Well, that's fine. I've worked here long enough. I was out of line. And I meant Mr. Rothenberg. I call you Mr. That's all right. I have just three brief points. Number one, regarding Section 167, which is another congressional announcement, congressional enactment, after Cleveland Allerton. There's nothing in the statute where it says subject to a lease, which says the lease must continue. If you read their brief, every time they talk about it, it says the lease must continue. The word continue is not in there. Secondly, the private letter ruling, the field service advice, they don't run these through my office. They're not precedential for a reason, because they don't have a high level of review, and quite frankly, they're wrong. And this court doesn't have to follow them. I don't follow them. Thirdly, to allow a deduction in this case creates significant income distortion. The whole idea behind capitalization versus deduction, it's just a timing issue anyway. They're going to get the tax relief. It's just over time under capitalization versus all at once. To allow somebody that bought this property a one-time deduction for six point some million vastly distorts their income, which is another reason why we have the capitalization rules. That's why I'm here. I look at this decision. It comes across my desk, and I say this cannot be the way the tax law is. And so I urge you to look at the later congressional announcements and Supreme Court rulings, and you can see that what the Cleveland Allerton did in 1948 was on a blank slate. The blank slate is written in now, and it should be capitalization. Okay. Thank you. Thank you, counsel, both of you, for your arguments today. Very much appreciate them. The case will be submitted.